In re Richard E. ROBIDOUX, Debtor.

Richard E. ROBIDOUX, Plaintiff,

v.

GUARANTY FIRST TRUST COMPANY and P&M Associates, Inc., Defendants.

Bankruptcy No. 4–80–00378–G.
Adv. No. 4–81–0331–G.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 26, 1981.

Kendall Burford, Maynard, Mass., for debtor/plaintiff.

Arthur D. Brecher, Newton Centre, Mass., for P&M Associates.

Lawrence P. Cohen, Newton, Mass., for Guaranty First Trust Co.

Paul Roberts, Paul R. Devin, Boston, Mass., for F.D.I.C.

PAUL W. GLENNON, Bankruptcy Judge.

### MEMORANDUM ON DEBTOR'S COMPLAINT FOR STAY OF FORECLOSURE PROCEEDINGS

The Debtor, Richard E. Robidoux, filed a complaint on October 2, 1981 seeking an order of this court staying the foreclosure sale of certain property known as the Westboro Speedway scheduled for October 23, 1981. The Debtor's motion for short order of notice having been allowed, the complaint came on for pretrial conference on October 9, 1981. The matter was continued to October 22, 1981 so that counsel might provide the Court with certain memoranda. Present at the October 22, 1981 hearing were Kendall Burford for the Debtor, Lawrence P. Cohen for Guaranty First Trust Company ("Guaranty"), Arthur D. Brecher for P&M Associates ("P&M") and Paul R. Devin for the Federal Deposit Insurance Corporation ("F.D.I.C.").

At the conclusion of the hearing, after consideration of the arguments presented to it, the Court denied the Debtor's request for stay of the scheduled foreclosure proceedings. This memorandum sets out the Court's reasoning.

### FACTS

An involuntary case under Chapter 7 was commenced against the Debtor, Richard E. Robidoux, on June 18, 1980. The case was converted to a Chapter 11 on December 8, 1980. The Debtor, the plaintiff in this proceeding, is the owner of certain property known as the Westboro Speedway consisting of 36.6 acres on Route 9 in Westboro, Massachusetts. Guaranty holds a first mortgage on the property, P&M holds a second mortgage, and F.D.I.C. holds a third mortgage, having acquired this mortgage

from the Mohawk Bank and Trust Company.

On September 11, 1980 P&M filed a complaint for relief from stay and for leave to foreclose its mortgage on the subject property. The Debtor, being unable to maintain the carrying charges or to properly maintain the property, did not oppose the motion and on October 15, 1980 an order terminating the stay was entered. In March of 1981 a foreclosure sale was held. The highest bid was a figure between $900,000 and $1,000,000. Subsequently this sale was set aside because of title defects and was rescheduled for October 23, 1981.

As of October 1981 liens on the Speedway property amounted to at least $1,656,-428.82.[1] Counsel for Guaranty represented the amount due Guaranty as of October 2, 1981, to be $704,610.68, which encompasses the principal balance due, interest to October 2, 1981, and late charges. Counsel for P&M represented the amount owing P&M under the terms and conditions of its mortgage, as of October 13, 1981, to be $221,-115.55. Counsel for F.D.I.C. represented the principal and interest due F.D.I.C. through October 31, 1981 to be $716,188.99. Real estate taxes presently due the Town of Westboro amount to $14,513.60. The Debtor did not dispute these figures. No payments have been made to either Guaranty or F.D.I.C. by the Debtor from at least the commencement of the Chapter 7 proceeding. P&M has been receiving payments in the amount of $3200 per month in the form of an assignment of rents pursuant to an agreement with the Court. According to a memorandum submitted by Debtor's counsel, the actual monthly payment due P&M is $6330.00.

In support of his October 2, 1981 complaint for stay of the foreclosure proceedings, the Debtor presented a document entitled "Proposed Limited Partnership Agreement for the Development of the Westboro Speedway, Westboro, Massachusetts". Parties to the agreement are the Debtor and Speedway Development, Inc. The Debtor contends that performance of this agreement will provide current monthly payments to the first and second mortgagees, pay off all mortgagees in full 24 months from the date of the agreement, and generate a substantial dividend for unsecured creditors. More specifically, under the agreement Speedway Development, Inc. undertakes to develop a shopping center on the site of the Speedway. In the interim, Speedway Development, Inc. proposes to pay, upon court approval of the agreement, $12,000 per month for the next 24 months. This payment purports to cover the monthly operating costs, including principal and interest payments on the first and second mortgages and the real estate taxes. No later than the end of the 24 month period the Debtor's estate would receive $2,000,000 from Speedway Development, Inc. in payment for the Debtor's contribution of the land. Any portion of the $2,000,000 after all mortgages are paid off would be available for unsecured creditors. Further, the estate would receive a 37.5 percent interest in the completed project. In sum, the Debtor contends that performance of the agreement will result in discharge of the three mortgages and at least a 33 percent dividend to unsecured creditors.[2] On the other hand, argues the Debtor, if the foreclosure sale on the Speedway property is allowed to go forward, it is a near certainty, given the experience of the March 1981 foreclosure sale, that the third mortgagee and the unsecured creditors will get nothing. The limited partnership proposal at least offers them some hope of recovery, says the Debtor, without jeopardizing the position of the first and second mortgagees because the monthly payments will protect their present position.

During the course of the hearing the Court gave the Debtor, through counsel, ample opportunity to convince the mortgagees of the advantages of his proposal. Guaranty and P&M remained unconvinced,

1. The property may also be subject to valid real estate attachments.

2. The Debtor has unsecured claims in the amount of $1,138,708.55 and other valid liens on the subject property or for priority claims.

stating that despite the Debtor's presentation in court and their own efforts during the preceding thirty days, they had not obtained any information on the financial feasibility of the Debtor's proposal. They had learned only that Speedway Development, Inc. was a corporation formed within the last month, without assets, and having as principal a person whose identity and financial ability Debtor's counsel was not free to disclose. Even F.D.I.C., which stands to be barred from satisfaction of its mortgage should the foreclosure sale proceed, did not endorse the Debtor's proposal, finding that with the information presently available to mortgagees, there was no genuine prospect of the proposal's successful performance. Moreover, the only payments potentially forthcoming over the next 24 months provided nothing for F.D.I.C.

## DISCUSSION

The thrust of Chapter 11 of the Bankruptcy Code is working out a program that will benefit a debtor's unsecured creditors. On the basis of the economic facts presented in this case, the Court sees no realistic prospect of benefit to the Debtor's unsecured creditors. The financial means for Speedway Development, Inc.'s ultimate purchase of the property for $2,000,000 are unknown and will not be disclosed. The gap between the total amount due to mortgagees and what will be left of the $2,000,000 purchase price after the three mortgages are discharged would be under $400,000. Before any of that $400,000 would become available to unsecured creditors, the position of over $1,000,000 in claims that assert secured status by virtue of attachments on the subject property would have to be determined. Further, priority expenses will not be inconsequential.

The value of a 37.5 percent interest in the proposed shopping center is also problematic. There are always unexpected problems encountered in land development projects. One obstacle to this project is already obvious, that is, the inadequate sewerage system that can reasonably be rectified only by extension of the Town of Westboro's system, a project apparently not soon to be undertaken.

For these reasons the Court finds no realistic prospect of a dividend for the unsecured creditors as a result of the proposed agreement with Speedway Development, Inc. For these same reasons the Court sees no genuine prospect for the satisfaction of the third mortgage held by F.D.I.C. twenty four months from now. The Court was particularly interested in ascertaining F.D.I.C.'s viewpoint on the Debtor's proposal since the successful performance of the proposed agreement appeared to be F.D.I.C.'s only hope for satisfaction of its claim. However, even F.D.I.C. could see nothing in the available information that would support a realistic prospect of a $2,000,000 payment two years down the road.

As for the first and second mortgagees, it must be noted that the promised $12,000 monthly payment is not sufficient to meet the monthly expenses on both mortgages. P&M's position would continue to erode. The Court is mindful of a debtor's expenditure in personal effort that is never represented on his financial statement and therefore the Court will be supportive of a debtor's rehabilitation efforts if it finds opposing mortgagees or other secured creditors are adequately protected. The Court, however, will not allow rehabilitation efforts to be undertaken at the expense of the pocketbook of the mortgagees and I find such is the case here. There is at least one cash buyer ready now to satisfy the real estate tax obligation and to take out the first and second mortgagees in full.

For all the reasons set forth above the Debtor's request for stay of the October 23, 1981 foreclosure proceedings was denied.